******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## WAYNE J. JONES, SR. *v.* COMMISSIONER OF CORRECTION*

Superior Court, Judicial District of Tolland
File No. CV-12-4004724
Memorandum filed November 21, 2014

*Proceedings*

Memorandum of decision on petitioner's petition for writ of habeas corpus. *Petition denied.*

*Dante R. Gallucci*, for the petitioner.

*Craig P. Nowak*, senior assistant state's attorney, for the respondent.

*Opinion*

OLIVER, J. The petitioner, Wayne Jones, initiated this petition for a writ of habeas corpus, claiming that his prior habeas counsel provided him ineffective legal representation during his previous habeas trial. He seeks an order of this court vacating his conviction and returning the matter to the criminal court for further proceedings. The court finds the issues for the respondent, the Commissioner of Correction, and denies the petition.

I

PROCEDURAL HISTORY

The petitioner was convicted after trial of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1); burglary in the first degree in violation of General Statutes (Rev. to 2005) § 53a-101 (a) (2); and kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B). Attorney Barry Butler represented the petitioner in the criminal matter. On December 16, 2005, the trial court (*Rodriguez, J.*) imposed a total effective sentence of thirty-five years imprisonment, execution suspended after twenty-five years to serve, followed by thirty-five years of probation.

The petitioner appealed from the judgment of conviction, which was affirmed by the Appellate Court. *State* v. *Jones*, 115 Conn. App. 581, 974 A.2d 72, cert. denied, 293 Conn. 916, 979 A.2d 492 (2009).

The petitioner filed his first habeas corpus petition, Docket No. CV-07-4001687, in which he was represented by Attorney Joseph Visone. On October 25, 2010, after trial, the court (*T. Santos, J.*) denied the habeas petition. A subsequent appeal of the habeas court's decision was dismissed by the Appellate Court on March 27, 2012. See *Jones* v. *Commissioner of Correction*, 134 Conn. App. 903, 38 A.3d 1253 (2012). This petition followed.

On April 11, 2012, the petitioner brought this petition. In his one count amended petition dated April 30, 2014, the petitioner asserts that his prior habeas counsel was ineffective in failing to establish Attorney Butler's deficient performance in that Attorney Butler:

1. Failed to adequately discuss with the petitioner the state's evidence and to advise him on the applicable law so as to allow him to make a knowing, intelligent and voluntary decision to try his case before a jury;

2. Failed to adequately investigate the case, potential witnesses and potential defenses to the state's DNA evidence;

3. Failed to seek an independent evaluation of the DNA evidence obtained by the state, to determine whether exculpatory evidence could be obtained;

4. Failed to prepare and present pretrial motions directed to obtain and preserve potentially exculpatory DNA evidence;

5. Failed to properly prepare and argue a motion to suppress the state's DNA evidence; and

6. Failed to adequately prepare for trial, including cross-examination of witnesses, rebutting the state's DNA evidence and arguing third party culpability as to the petitioner's cousin.

The petitioner argues that these several claimed deficiencies are of such magnitude as to render his representation by Attorney Butler constitutionally deficient. For the following reasons, the several claims fail, and the court denies the petition.

The entirety of the petition surrounds the DNA evidence presented to the court during the motion to suppress and to the jury during the underlying criminal trial. Accordingly, the court's focus will be on facts found by this court relative to recovered DNA evidence.

On October 19, 2006, at a hearing on the petitioner's motion to suppress before the trial court (*Rodriguez, J.*), Dr. Michael Bourke, lead criminalist at the Connecticut State Forensic Science Laboratory, testified to the proper procedures for the acceptance of potential DNA evidence from an outside agency, as well as the proper procedures for the preservation, testing, analysis and comparison of DNA samples in his facility. The doctor also testified to state and federal regulations and protocols designed to maintain the integrity of both the nationwide computerized DNA database, known as "CODIS" (Combining DNA Index) in general and the State Laboratory in particular. Comparing the testimony provided by Dr. Bourke to the subsequent trial testimony of State Laboratory employees, this court finds nothing in the evidence to suggest that there were any improprieties in the processing and analysis of the DNA evidence submitted to the State Laboratory in the petitioner's underlying criminal trial.

Karen Lamy, a criminalist at the Connecticut State Forensic Science Laboratory's forensic biology section, testified at the petitioner's criminal trial. Ms. Lamy testified to the submission of the sexual assault evidence collection kit to the laboratory, her examination of vaginal smears collected from the victim by medical personnel, and her identification of spermatozoa and red blood cells on the smear. The evidence collected from the smear was submitted by Ms. Lamy for DNA analysis. Ms. Lamy later received buccal swabs from the petitioner and the victim's boyfriend that were submitted for DNA analysis.

Christine Roy, a forensic science examiner for the Connecticut State Forensic Science Laboratory, testified at the petitioner's criminal trial. Ms. Roy examined

the results of the vaginal smear and buccal swabs submitted to her section by Ms. Lamy for the presence of physiological fluids and DNA testing. Ms. Roy obtained DNA profiles from the vaginal smear. Ms. Roy also examined known DNA profiles of the petitioner and the victim's boyfriend from buccal swabs submitted by law enforcement, as well as a known DNA profile of the victim from the sexual assault evidence collection kit. Ms. Lamy testified that after a DNA extraction process and subsequent analysis, all of the petitioner's DNA profile was identified as being present in the DNA mixture of spermatozoa obtained from the vaginal swab contained in the sexual assault collection kit taken from the victim of the sexual assault for which the petitioner stood trial. Ms. Lamy further testified that the expected frequency of individuals who could be a contributor to the DNA profile from the sperm-rich fraction of the vaginal smear is approximately one in six hundred fifty thousand in the African-American population. The affidavit in support of the search and seizure warrant that authorized the taking of a buccal swab DNA sample from the petitioner identifies him as "Black."

Ms. Lamy further testified that Dwayne White, the petitioner's cousin, was eliminated as a contributor to the DNA profile of spermatozoa taken from the vaginal smear contained in the sexual assault collection kit obtained from the victim after the sexual assault for which the petitioner stood trial.

At the petitioner's trial on his previous habeas petition, much the same evidence was presented to the trial court. Attorney Visone's examination of the several witnesses called was thorough and well within the range of competent representation.

During the instant habeas trial, the petitioner submitted a number of exhibits as well the testimony of himself and criminal trial counsel. The petitioner and respondent submitted into evidence portions of the trial transcript from the underlying criminal trial and motion to suppress. The respondent also submitted into evidence the 2010 habeas trial transcript and memorandum of decision.

Attorney Butler testified to his representation of the petitioner at the underlying criminal trial in 2006. He further testified to his experience as a criminal defense attorney for the past twenty-eight years, including as a trial attorney in private practice, a part A public defender, and a public defender in the office's Capital Defense and Trial Services Unit (hereinafter capital unit). Attorney Butler testified to extensive experience in the trial of serious felony offenses, including sexual assault and murder. Prior to representing the petitioner in the underlying trial, Attorney Butler represented approximately forty other clients accused of similar crimes. During the course of his experience as a criminal defense attorney, Attorney Butler became very

familiar with the use of DNA evidence in criminal prosecutions, including its collection, preservation and analysis. In addition to formal training, Attorney Butler, using the resources of the capital unit, availed himself of the increased access to experts and emerging technologies in the area of DNA forensics.

Regarding his representation of the petitioner, Attorney Butler testified credibly that he familiarized himself with the entirety of the state's case against the petitioner, including the potential introduction of DNA evidence implicating his client. He testified to meeting several times with the petitioner during the course of the prosecution, reviewing the allegations and the anticipated evidence to be introduced against him at trial, including DNA evidence. The court finds, based on his testimony, that Attorney Butler took great pains to make the petitioner aware of the strength of the state's evidence against him, especially as it related to any potential defense strategies. The court finds that, despite compelling evidence identifying the petitioner as a contributor to DNA contained within a sample of biological material collected in relation to the sexual assault, the petitioner insisted on a defense strategy of mistaken identity, i.e., that the victim misidentified the petitioner as the perpetrator of the sexual assault.

The court further credits Attorney Butler's testimony of his extensive preparation for the trial of the underlying criminal matter, including the filing and litigation of a motion to suppress the results of a DNA sample taken from the petitioner based on a lack of probable cause to seize the buccal sample, the pretrial investigation and interview of the state's expert witness, and the exploration of third party culpability as a potential defense. As testified to at the habeas trial, a third party culpability defense directed to the petitioner's cousin would have been unavailing, as the cousin was excluded as a contributor of DNA to the sample of biological material connected to the sexual assault.

Attorney Butler testified to his strategic reasoning in not seeking an independent evaluation of the DNA analysis performed by the employees at the State Police Forensic Science Laboratory. Based on his training and specific experience and familiarity with the state's potential trial witnesses, a decision was made to interview and cross-examine these witnesses at trial, rather than to create additional evidence potentially damaging to the defense by hiring an outside consultant. There is no evidence to support a contention that an outside DNA evaluation would have successfully challenged the conclusions of the state's expert witnesses. The trial record makes clear that the petitioner, through Attorney Butler, did indeed mount a defense, though unsuccessful, to contest the inculpatory effect of the state's DNA evidence.

The petitioner testified that the sole basis of the cur-

rent petition is his belief that Attorney Visone's representation was ineffective in that he failed to establish the several claimed deficiencies in Attorney Butler's representation only as it relates to issues surrounding DNA evidence at the criminal trial. Contrary to the assertions in the petition, the petitioner testified on redirect examination that, after meeting with Attorney Visone, he was in agreement with the claims presented in the amended petition filed by counsel in the prior habeas matter.

The petitioner's testimony at the habeas trial was loose, equivocal, contradictory and unconvincing. He testified alternatively that he never discussed the state's potential DNA evidence with Attorney Butler, but that he was made aware "through [his] attorneys" that the state intended to offer DNA evidence against him at trial. He further testified that he "only saw [his attorney] once" prior to trial, that Attorney Butler "never came to see [him] in jail," and that he met with Attorney Butler three to four times. It is clear from the petitioner's testimony that Attorney Butler did indeed discuss with him at prison visits the nature and elements of the offenses against him, the anticipated evidence to be presented, including DNA, potential defenses to the charges, the motion to suppress, and whether the petitioner would decide to take the case to trial. It is also clear that the petitioner did not like what he was hearing when he "ended the conversation and . . . left." The petitioner testified that he unequivocally told Attorney Butler that he wanted a trial and wanted his defense strategy to be that of mistaken identity, as he "told [Attorney Butler], I didn't do this," and that he was "not at the crime scene." It is evident from the entire record that the petitioner refuses to accept, despite the best efforts of counsel, the scientific conclusion that being identified as a contributor of DNA to a biological sample collected at a sexual assault crime scene, even in a mixture with other contributors as in the underlying criminal matter, is compelling evidence of identity and of being present at the crime scene.

## II

### DISCUSSION

"A criminal defendant's right to the effective assistance of counsel . . . is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." (Citations omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). The petitioner has the burden to establish that "(1) counsel's representation

fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575, 941 A.2d 248 (2008), citing *Strickland* v. *Washington*, supra, 694.

"To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment." (Internal quotation marks omitted.) *Ledbetter* v. *Commissioner of Correction*, 275 Conn. 451, 458, 880 A.2d 160 (2005), cert. denied sub nom. *Ledbetter* v. *Lantz*, 546 U.S. 1187, 126 S. Ct. 1368, 164 L. Ed. 2d 77 (2006), quoting *Strickland* v. *Washington*, supra, 466 U.S. 687. It is not enough for the petitioner to simply prove the underlying facts that his attorney failed to take a certain action. Rather, the petitioner must prove, by a preponderance of the evidence, that his counsel's acts or omissions were so serious that counsel was not functioning as the "counsel" guaranteed by the sixth amendment, and as a result, he was deprived of a fair trial. *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 845–46, 947 A.2d 7, cert. denied, 288 Conn. 908, 953 A.2d 652 (2008).

Under the second prong of the test, the prejudice prong, the petitioner must show that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." (Internal quotation marks omitted.) *Michael T.* v. *Commissioner of Correction*, 307 Conn. 84, 101, 52 A.3d 655 (2012).

When assessing trial counsel's performance, the habeas court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland* v. *Washington*, supra, 466 U.S. 689. The United States Supreme Court explained:

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." (Citation omitted; internal quotation marks omitted.) Id.

Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id., 686.

## III

### ATTORNEY BUTLER

#### A

#### Pretrial Investigation

The petitioner claims that the pretrial investigation by his attorney was deficient in that he failed to properly investigate, evaluate and challenge the state's proffered DNA evidence. Had counsel done so, the petitioner claims, he would have discovered exculpatory DNA evidence showing that it was a third party, perhaps even the petitioner's cousin, who committed the sexual assault. As previously stated in this decision, based on this court's review of the relevant portions of both the criminal and habeas trial transcripts, all available evidence contradicts the possibility of third party culpability. The court finds that the petitioner has failed to prove this claim.

"The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." (Citations omitted; internal quotation marks omitted.) *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 858–59, 33 A.3d 819, cert. denied, 303 Conn. 936, 36 A.3d 695 (2012).

#### B

#### Evidence and Examination of Witnesses

The petitioner next claims that his trial attorney performed deficiently during the course of the trial by failing to adequately cross-examine witnesses from the State Laboratory and present evidence in the petitioner's defense. "An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010). Similarly, "the presentation of testimonial evidence is a matter of trial strategy . . . ." (Citation omitted; internal quotation marks omitted.) *Bowens* v. *Commissioner of Correction*, 104 Conn. App. 738, 744, 936 A.2d 653 (2007), cert. denied, 286 Conn. 905, 944 A.2d 978 (2008).

"[C]ross-examination is a sharp two-edged sword and more criminal cases are won by not cross-examining adverse witnesses, or by a very selective and limited

cross-examination of such witnesses, than are ever won by demolishing a witness on cross-examination." (Internal quotation marks omitted.) *State* v. *Clark*, 170 Conn. 273, 287–88, 365 A.2d 1167, cert. denied, 425 U.S. 962, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976). "The fact that counsel arguably could have inquired more deeply into certain areas, or failed to inquire at all into areas of claimed importance, falls short of establishing deficient performance." *Velasco* v. *Commissioner of Correction*, supra, 119 Conn. App. 172.

Based on the whole record, the court finds that as to both the motion to suppress and the criminal trial, Attorney Butler did properly investigate and pursue all reasonable avenues in an effort to challenge the integrity of the state's evidence implicating the petitioner in the underlying sexual assault. There is no evidence of the existence of any DNA evidence that would have been exculpatory of the petitioner in the commission of the crimes of which he was convicted.

Additionally, based on a review of the transcript of the motion to suppress, this court is not persuaded of the probability that an examination of Dr. Bourke on law enforcement forensic evidence collection methods before the jury would have yielded a different verdict. There is not sufficient evidence in the record to suggest that there existed any testimony available from any known witness, including Dr. Bourke, that would have been helpful in establishing the petitioner's asserted defense. See *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 624, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999).

IV

ATTORNEY VISONE

The petitioner alleged that his habeas counsel in a prior proceeding was ineffective for failing to raise a claim of ineffective assistance of trial counsel on the ground that trial counsel failed to sufficiently challenge the state's expected DNA evidence.

For assessing claims of ineffective assistance based on the performance of prior habeas counsel, the *Strickland* standard is as follows: "[When] applied to a claim of ineffective assistance of prior habeas counsel, the *Strickland* standard requires the petitioner to demonstrate that his prior habeas counsel's performance was ineffective and that this ineffectiveness prejudiced the petitioner's prior habeas proceeding. . . . [T]he petitioner will have to prove that . . . prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that he was entitled to reversal of the conviction and a new trial . . . . Therefore, as explained by our Supreme Court in *Lozada* v. *Warden*, 223 Conn. 834, 613 A.2d 818 (1992), a petitioner claiming ineffective

assistance of habeas counsel on the basis of ineffective assistance of [appellate] counsel must essentially satisfy *Strickland* twice: he must prove both (1) that his appointed habeas counsel was ineffective, and (2) that his trial counsel was ineffective." (Citations omitted; internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 113 Conn. App. 378, 394, 966 A.2d 780 (2009).

Therefore, in order to set forth a prima facie case of ineffective assistance of habeas counsel on the ground of ineffective assistance of trial counsel, the petitioner must set forth a prima facie case of ineffective assistance of trial counsel. In the instant matter, because the petitioner failed to set forth a prima facie case regarding the ineffective assistance of his trial counsel, he has not set forth a prima facie case of ineffective assistance of his habeas counsel. Additionally, a full review of the habeas trial transcript as well as the habeas trial court's memorandum of decision reveals no deficiencies in Attorney Visone's representation at the trial on the previous habeas corpus petition.

## V

## CONCLUSION

For all of the foregoing reasons, the petition is denied. Judgment shall enter for the respondent.

* Affirmed. *Jones* v. *Commissioner of Correction*, 169 Conn. App. 405, A.3d     (2016).

---