******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER MILLER *v.* COMMISSIONER OF CORRECTION
(AC 39330)

Alvord, Sheldon and Norcott, Js.

*Syllabus*

The petitioner, a citizen of Jamaica, sought a writ of habeas corpus, claiming
that his trial counsel provided ineffective assistance by failing to advise
him adequately as to the immigration consequences of his guilty plea
to a certain drug related offense that constituted an aggravated felony
under federal immigration law, which subjected him to mandatory depor-
tation. The habeas court rendered judgment denying the habeas petition
and, thereafter, denied the petition for certification to appeal, and the
petitioner appealed to this court. *Held*:

1. The habeas court abused its discretion in denying the petition for certifica-
tion to appeal, as a resolution of the issues raised by the petitioner
concerning counsel's performance were debatable among jurists of rea-
son and could have been resolved by a court in a different manner.

2. The habeas court improperly concluded that the petitioner's trial counsel
provided effective assistance in advising the petitioner regarding the
immigration consequences of his guilty plea: the record showed that
trial counsel failed to accurately advise the petitioner that his guilty
plea to an aggravated felony would subject him to mandatory deportation
but, instead, advised him that there was a substantial likelihood that he
would be deported as a result of the conviction, which was contrary to
the requirement that counsel unequivocally convey to the petitioner
that, as a result of his guilty plea to an aggravated felony, he was subject
to mandatory deportation under federal law; nevertheless, because the
habeas court did not make any findings as to whether the petitioner
demonstrated that he was prejudiced by trial counsel's performance,
and the question of prejudice presented a mixed question of fact and
law, the matter was remanded to the habeas court for a determination
of whether the petitioner was prejudiced by his trial counsel's defi-
cient performance.

Argued April 18—officially released September 26, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland, geographical area number nineteen, and tried
to the court, *Fuger, J.*; judgment denying the petition;
thereafter, the court denied the petition for certification
to appeal, and the petitioner appealed to this court.
*Reversed; further proceedings.*

*Vishal K. Garg*, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney,
with whom, on the brief, were *John C. Smriga*, state's
attorney, *Angela Macchiarulo*, senior assistant state's
attorney, and *Yamini Menon*, assistant state's attorney,
for the appellee (respondent).

*Opinion*

NORCOTT, J. The petitioner, Peter Miller, a citizen of Jamaica, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion in denying certification to appeal and (2) improperly concluded that trial counsel did not render ineffective assistance when advising him of the immigration consequences of his guilty plea. We agree that the habeas court abused its discretion in denying the petition for certification to appeal and that trial counsel rendered deficient performance when advising the petitioner of the immigration consequences of his guilty plea. We conclude, however, that the record is inadequate to determine whether the petitioner was prejudiced by counsel's deficient performance. Accordingly, we reverse the judgment of the habeas court and remand the matter for further habeas proceedings in accordance with this opinion.

The following facts and procedural history are relevant to our resolution of this appeal. The petitioner was charged under two separate docket numbers with a variety of drug related offenses. On June 7, 2012, the petitioner appeared before the court, *Iannotti, J.*, and, pursuant to a plea deal, pleaded guilty to possession of a controlled substance with intent to sell in violation of General Statutes § 21a-278 (b). At that time, the prosecutor recited the following facts underlying this plea. On or about October 13, 2011, a United States Postal Service inspector intercepted a package that contained eighteen pounds of marijuana. Thereafter, a controlled delivery was made to 15 Pinetree Lane in Fairfield. The package was accepted by the petitioner's girlfriend, Tracy Dapp, who, upon accepting it, informed the detectives that the parcel was for the petitioner. Subsequently, the petitioner arrived at Dapp's residence, where he was arrested and made incriminating statements to the police. The record indicates that a search of the petitioner's vehicle revealed the eighteen pounds of marijuana, but it is unclear whether Dapp gave the petitioner the marijuana to put in his vehicle before he was apprehended by the police at her residence.

The petitioner was represented before the trial court by Attorney Jared Millbrandt, a public defender. During the plea canvass, the court asked the petitioner whether he had discussed with counsel "the charge he pleaded guilty to, the elements of the offense, maximum penalty twenty years, [and] mandatory minimum five years," and whether the petitioner understood that the court could deviate below the mandatory minimum sentencing guidelines, to which the petitioner answered, "Yes." The court then asked whether the petitioner was pleading guilty "freely and voluntarily." The petitioner replied, "Yes." The court asked, "Are the facts as read by

the state essentially correct?" The petitioner answered, "Correct." Finally, the court asked the following: "Do you understand [that] if you are not a citizen this can result in deportation from the United States, exclusion from the admission to the United States, [and] denial of naturalization pursuant to the laws of the United States?" The petitioner replied, "Yes." The court then found that the plea was voluntarily and knowingly made with the assistance of competent counsel. On July 30, 2012, the court sentenced the petitioner to seven years of incarceration, execution suspended after sixteen months, followed by three years of probation.

On July 30, 2013, the United States Immigration Court ordered that the petitioner be removed from the United States to Jamaica because his conviction of possession of a controlled substance with intent to sell constituted an aggravated felony, for which the consequence is mandatory deportation.[1]

In May, 2015, the petitioner commenced the present action. On September 8, 2015, the petitioner filed the operative amended petition for a writ of habeas corpus, which in relevant part alleges ineffective assistance of counsel because Millbrandt did not adequately advise him as to the immigration consequences of his guilty plea.[2]

The court held the habeas trial on February 11, 2016, during which the court heard testimony from, among others: Millbrandt; Justin Conlon, an immigration attorney; Kenneth Simon, a retired public defender with knowledge of the standard of care for criminal defense attorneys; Elisa Villa, a supervisory assistant public defender; and the petitioner. On May 25, 2016, the court issued an oral ruling from the bench. In relevant part, the court made the following findings of fact and conclusions of law concerning the petitioner's claim that Millbrandt had rendered ineffective assistance: "Millbrandt was aware of the immigration issues and it is clear from his testimony . . . that he did, in fact, investigate, discuss and understand the immigration issues and immigration status of [the petitioner]. . . . Millbrandt [met] the minimal standards of providing advice on the immigration issue to [the petitioner]. It does not, however, appear that [Millbrandt] *categorically advised* [the petitioner] that he would under any and all circumstances be deported to Jamaica if he accepted this guilty plea. He did, in fact, fall slightly short of that statement. . . .

"Nevertheless, [the petitioner] and his counsel did discuss the immigration issues numerous times. [Millbrandt] told [the petitioner] to assume that he would be deported.[3] In other words, when making the decision as to whether to accept the plea bargain, he all but told him it would be . . . a virtual certainty [that the petitioner would] be deported. He told him there was a substantial likelihood of deportation.

"It is clear that [the petitioner] and [Millbrandt] discussed the immigration issues early and often. In fact, [Millbrandt] reviewed the document that [Villa] had prepared, which parenthetically the court notes is a thorough summary of the issue for criminal practitioners.

"[Millbrandt] further indicated that he spoke with an immigration lawyer.[4] [Millbrandt] indicated that he even discussed the immigration issues with the prosecutor, but the prosecutor was not interested or concerned about the immigration issues, nor is there any case law that suggests that a prosecutor has any duty to consider immigration implications.

"[Millbrandt] told the petitioner that there was a likelihood that he would be deported. It's a bit disingenuous at this point then for [the petitioner] to indicate he wasn't aware that by pleading to this case there could be adverse immigration effects upon his immigration status.

"I will specifically find that the advice of [Millbrandt], while perhaps not as thorough as that suggested by [habeas] counsel for the petitioner, did meet the minimal standards of constitutional acceptability and that he did not violate the standard of care required of a criminal defense counsel operating within the state of Connecticut." (Emphasis added; footnote added.)

Accordingly, the court denied the petition for a writ of habeas corpus because the petitioner had failed to prove deficient performance, and subsequently denied further the petitioner's petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

I

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his petition for a writ of habeas corpus with respect to his claims of ineffective assistance of counsel. Specifically, he argues that because these issues are debatable among jurists of reason, a court could resolve the issues differently, and, therefore, the habeas court abused its discretion in denying his petition to appeal.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the

merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Citations omitted; internal quotation marks omitted.) *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017).

As discussed more fully in part II of this opinion, we agree with the petitioner's claim that trial counsel rendered deficient performance in that he failed to accurately advise the petitioner as to the immigration consequences of his guilty plea. Accordingly, we need not address the petitioner's claim as to whether counsel failed to accurately advise him of the enforcement practices of the federal immigration authorities. Cf. *State* v. *Ross*, 230 Conn. 183, 285, 646 A.2d 1318 (1994) (declining to review claim when dispositive claim resolved in defendant's favor); *Breiter* v. *Breiter*, 80 Conn. App. 332, 335 n.1, 835 A.2d 111 (2003) (same). Because the resolution of the petitioner's claim involves issues that are debatable among jurists of reason, we conclude that the habeas court abused its discretion in denying certification to appeal from the denial of the petition for a writ of habeas corpus.

II

We now turn to the petitioner's substantive claim, which is that the habeas court improperly concluded that he received effective assistance of counsel. Specifically, he argues that (1) counsel was deficient for failing to adequately advise him of the immigration consequences of his guilty plea, and (2) that he was prejudiced by counsel's deficient performance.

We set forth the relevant legal principles and our standard of review. "The sixth amendment to the United States constitution, made applicable to the states through the due process clause of the fourteenth amendment, affords criminal defendants the right to effective assistance of counsel. *Davis* v. *Commissioner*

*of Correction*, 319 Conn. 548, 554, 126 A.3d 538 (2015), cert. denied sub nom. *Semple* v. *Davis*,      U.S.     , 136 S. Ct. 1676, 194 L. Ed. 2d 801 (2016); see also *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100, 111 A.3d 829 (2015) (criminal defendant constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings). Although a challenge to the facts found by the habeas court is reviewed under the clearly erroneous standard, whether those facts constituted a violation of the petitioner's rights under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of this case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"It is well established that the failure to adequately advise a client regarding a plea offer from the state can form the basis for a sixth amendment claim of ineffective assistance of counsel. The United States Supreme Court . . . recognized that the two part test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to ineffective assistance of counsel claims arising out of the plea negotiation stage. *Hill* v. *Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) . . . ." (Citations omitted; internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 646–47, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017).

We now set forth the well established standard that applies to a claim of ineffective assistance of counsel. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. . . . The petitioner has the burden to establish that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .

"To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . It is not enough for the petitioner to simply prove the underlying facts that his attorney failed to take a certain action. Rather, the petitioner must prove, by a preponderance of the evidence, that his counsel's acts or omissions were so serious that counsel was not functioning as the counsel guaranteed by the sixth amendment, and as a result, he was deprived of a fair trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Jones* v. *Commissioner of Correction*, Superior Court,

judicial district of Tolland, Docket No. CV-12-4004742-S (November 21, 2014) (reprinted in 169 Conn. App. 407, 415–16), aff'd, 169 Conn. App. 405, 150 A.3d 757 (2016), cert. denied, 324 Conn. 909, 152 A.3d 1246 (2017).

"For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . [S]ee . . . *Hill* v. *Lockhart*, [supra, 474 U.S. 59] (modifying *Strickland* prejudice analysis in cases in which petitioner entered guilty plea). It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier. *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, [cert. denied, 322 Conn. 901, 138 A.3d 931 (2016)], citing *Strickland* v. *Washington*, supra, 466 U.S. 697 (a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner])." (Citation omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 278, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017).

A

The petitioner first argues that the habeas court improperly concluded that Millbrandt's performance was not deficient. Specifically, he alleges that Millbrandt failed to advise him adequately that entering a guilty plea to an aggravated felony would subject him to mandatory deportation. We agree.

The following additional facts are necessary for our resolution of this claim. At the habeas trial, Millbrandt testified that the petitioner's primary concern was to avoid a lengthy term of imprisonment, and that once that it became apparent that avoiding a term of imprisonment was not possible, discussions of a plea deal ensued. As part of his advice to the petitioner in relation to the plea deal and its effect on his immigration status, Millbrandt relayed to the petitioner that "*anything is possible* with regard to the federal government that *they may decide to not take immigration action against him* or actually come and physically remove him but . . . my advice to him was that in my opinion convictions of these . . . charges would be drug trafficking offenses and [that] they would *render him deportable so we should assume that that would be the case.*" (Emphasis added.) The following exchange occurred between the petitioner's habeas counsel and Millbrandt:

"Q. What did you do to determine the immigration

consequences in [the petitioner's] case?

"A. . . . In December of 2011, I had contacted an immigration attorney in light of the *Padilla* [v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)] decision . . . to determine or obtain some tools that would be helpful in advising clients as to potential immigration consequences and as a result of that conversation and e-mail with that attorney, I was sent [A Brief Guide to Representing Non-Citizen Criminal Defendants in Connecticut (brief guide)]. . . .

"Q. Did you rely on [the brief guide] in determining the immigration consequences in [the petitioner's] case specifically?

"A. Yes."

The following additional exchange occurred during the direct examination of Millbrandt:

"Q. Did you ever advise [the petitioner] that he definitely would be deported?

"A. I said that in my opinion a conviction would render him deportable. I could not speak for Immigration and Customs Enforcement as to whether they would actually decide to come and pick him up.

"Q. Did you explain to him what you meant by deportable?

"A. Yes.

"Q. And what did you tell him?

"A. That deportation proceedings could be carried out against him. He would possibly be held until he was removed physically . . . from the country to Jamaica.

"Q. Did you give him any advice about the likelihood of deportation?

"A. My advice was that based on either of these options[5] there was a *substantial likelihood and probability* that [he] would be deported.

"Q. And was that the language that you used: substantial likelihood?

"A. I told him that there was a . . . substantial likelihood or substantial possibility of his deportation, yes.

"Q. Did you write down the specific language you used?

"A. No, I did not.

"Q. Did you advise [the petitioner] whether immigration authorities were mandated to deport him?

"A. No. . . .

"Q. So it was you[r] testimony [that] you told [the petitioner] that he would be deportable. Is that right?

"A. Yes.

"Q. And that that meant that he could be picked up by immigration authorities and removed from the country?

"A. Correct. That that was a possibility, yes. . . .

"Q. Did you advise him about the likelihood that he would be picked up by immigration authorities?

"A.  . . .  I did not. I did not say whether it was likely or not that he would be picked up. I said it was a possibility that he could be picked up by the immigration authorities.

"Q. Did you advise him about what would happen if [he] were picked up or about the likelihood of success in immigration proceedings?

"A. No.

"Q. Did you ever advise him that he would be automatically deportable?

"A. No, I did not.

"Q. Did you advise him that deportation was a virtual certainty?

"A. I did not say that. I said [that] I thought  . . .  there was a substantial likelihood that he would be deported. I did not tell him it was a virtual certainty." (Emphasis added.)

The following exchange between counsel for the respondent, the Commissioner of Correction, and Millbrandt occurred on cross-examination:

"Q. [Y]ou indicated that you told him assume you would be deported if you accepted a plea to either one of these charges?

"A. I told him that in my opinion it was safe to assume that he would face deportation as a result of a plea to either one of the options that were put to us.

"Q. And he appeared to you to understand what you said with respect to the fact that he would be deported if he entered a plea to either of these charges?

"A. He appeared to.

"Q. And he never indicated to you that he didn't understand?

"A. No.

"Q. And he never questioned what deportation meant?

"A. No.

"Q. And he never indicated to you that he alternatively would want to reject the plea offer and actually go to trial; did he?

"A. He did not. . . .

"Q. [Y]ou told [the petitioner] that if he were to accept either plea, he would be deported. Isn't that correct?

"A. I did not tell him that it was a certainty that he would be deported. . . . I told him that it was safe to assume that he would be deported."

The petitioner testified that Millbrandt did not advise him that he would "definitely be deported or that it was a virtual certainty" upon the entry of a guilty plea, and that, contrary to Millbrandt's testimony, he *received no advice* about any immigration consequences that would result from the entry of a guilty plea. The petitioner testified that, had he been advised that pleading guilty would result in his deportation, he would have not taken the plea deal and instead would have taken his chances with a trial, even if it meant a term of imprisonment up to fifty years.[6]

Having reviewed the relevant facts, we now turn to the legal principles that guide our analysis of the petitioner's claim. In order to assess the conclusion of the habeas court that Millbrandt had satisfied the minimal standard in advising the petitioner of the immigration consequences of his guilty plea, and therefore did not render deficient performance, we must review *Padilla* v. *Kentucky*, supra, 559 U.S. 356; and *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 142 A.3d 243 (2016). In *Padilla*, the United States Supreme Court held for the first time that a defense attorney's failure to advise his client accurately of the immigration consequences of his guilty plea could constitute ineffective assistance of counsel. *Padilla* v. *Kentucky*, supra, 368–69. The Supreme Court further explained the obligations of a criminal defense attorney when advising a client of the immigration consequences of the pending criminal charge(s): "When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. *But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear*." (Emphasis added; footnote omitted.) Id., 369.

Our Supreme Court recently considered the degree of clarity required by *Padilla* when advising a noncitizen client on the mandatory immigration consequences of his guilty plea in *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 506–507. In *Budziszewski*, trial counsel negotiated a plea deal whereby the petitioner, Piotr Budziszewski, a lawful permanent resident, would plead guilty to one count of possession of a controlled substance with intent to sell, which is an aggravated felony for which deportation is mandated. Budziszewski pleaded guilty to that charge. After his release from state custody, Budziszewski was detained by federal authorities and was ordered to be removed on the basis of his felony conviction. Id., 508–509. In his petition for a writ of habeas corpus, Budziszewski alleged, inter alia, that trial counsel failed to advise him

of the immigration consequences of his guilty plea as required by *Padilla*. Id. The habeas court concluded that trial counsel's advice to Budziszewski—that his conviction would create a " 'heightened risk' " of deportation, rather than mandate deportation under federal law, was adequate under *Padilla*. Id., 510. Our Supreme Court disagreed, reasoning that counsel's warning that Budziszewski was only facing a " 'heightened risk' " of deportation "would not accurately characterize the law." Id., 512. Instead, "[b]ecause federal law called for deportation for the petitioner's conviction, [trial] counsel was required to unequivocally convey to [Budziszewski] that federal law mandated deportation as the consequence for pleading guilty." Id.

Our Supreme Court further explained that, for crimes designated as aggravated felonies, "*Padilla* requires counsel to inform the client about the deportation consequences prescribed by federal law. . . . Because noncitizen clients will have different understandings of legal concepts and the English language, there are no precise terms or one-size-fits-all phrases that counsel must use to convey this message. Rather, courts reviewing a claim that counsel did not comply with *Padilla* must carefully examine all of the advice given and the language actually used by counsel to ensure that counsel explained the consequences set out in federal law accurately and in terms the client could understand. In circumstances when federal law mandates deportation and the client is not eligible for relief under an exception to that command, counsel *must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty*." (Emphasis added.) Id., 507.

In *Duncan* v. *Commissioner of Correction*, supra, 171 Conn. App. 635, we had an opportunity to consider the impact of *Budziszewski* on our *Padilla* jurisprudence. In *Duncan*, the habeas court concluded that the petitioner's trial counsel did not perform deficiently despite testifying that "he could not recall clearly advising the petitioner that he would be deportable without a defense [to deportation], although it was his practice to have conversations with clients regarding the immigration consequences of a guilty plea." Id., 656. We noted that trial counsel also admitted that he probably was unaware that the petitioner's conviction constituted an aggravated felony for immigration purposes or that an aggravated felony rendered a noncitizen deportable without a defense to deportation. Id. "In response to the petitioner's argument that [his counsel] failed to tell him that removal was mandatory and nonappealable, the habeas court indicated that these collateral consequences were not of constitutional magnitude and could not be transformed into direct consequences." Id., 657.

In *Duncan*, we concluded that, "[i]n accordance with

the clarification in *Budziszewski* of counsel's duty to unequivocally inform a client of the mandatory deportation as a consequence of pleading guilty to an aggravated felony, the habeas court improperly concluded that [counsel's] performance was not deficient. Specifically, [counsel] failed to comply with *Padilla* because he did not explain the clear immigration consequences set forth in federal law in an accurate manner and in terms that the petitioner could comprehend. . . . The immigration consequences in this case were clearly discernable; [the petitioner's conviction] constituted an aggravated felony for immigration purposes and thus federal law mandated deportation. [The petitioner's counsel], therefore, was obligated to convey to the petitioner unequivocally this consequence of pleading guilty." (Citation omitted.) Id., 658.

We explained in *Duncan* that, even if the habeas court credited counsel's testimony that the petitioner's conviction could " 'create some problems with regard to . . . immigration,' this statement does not meet the required standard set forth in *Padilla*,"; id., 658–59; and concluded that "this advice is akin to the advice given in *Budziszewski* where counsel warned of a heightened risk of deportation . . . ." (Internal quotation marks omitted.) Id., 659. We held that the petitioner's counsel was "required to inform the petitioner that, as a result of his guilty plea to a crime that fell within the federal definition of an aggravated felony, he was subject to mandatory deportation under federal law, which [counsel] failed to do. His advice did not meet the standard set forth in *Padilla* as interpreted by *Budziszewski*. Accordingly, we agree with the petitioner that the habeas court improperly determined that [counsel] was not deficient, under *Strickland*, with respect to his advice regarding the immigration consequences . . . ." Id., 659. We then held that the petitioner failed to successfully challenge the habeas court's conclusion that he was not prejudiced as a result of trial counsel's deficient performance and, accordingly, concluded that the habeas court did not abuse its discretion in denying certification to appeal. Id., 663–65.

With the foregoing legal principles in mind, we now review the conclusion of the habeas court that Millbrandt did not render deficient performance. It is undisputed that a conviction under § 21a-278 (b) constitutes an aggravated felony and that federal immigration law mandates deportation for aggravated felonies, with limited exceptions that do not apply in the present case. Millbrandt testified that he was aware of this and therefore advised the petitioner that in relation to the immigration consequences he was facing, he should "assume that he would be deported" and that there was a "substantial likelihood and probability" or "possibility" of deportation. He further counseled the petitioner that his conviction would render him "deportable" and explained that term to mean that "deportation proceed-

ings could be carried out against him." Millbrandt further testified that he did not advise the petitioner as to whether immigration authorities were mandated to deport him and that he did not advise the petitioner that, as a result of his guilty plea, his subsequent deportation was a virtual certainty and that he would be automatically deportable.

On the basis of this testimony, the habeas court found that Millbrandt did not "categorically [advise the petitioner] that he would under any and all circumstances be deported to Jamaica if he accepted [the] guilty plea." The court nonetheless concluded that Millbrandt's advice was constitutionally adequate under *Padilla*.

In light of our Supreme Court's articulation in *Budziszewski*, we conclude that the habeas court incorrectly concluded that Millbrandt's advice was constitutionally adequate. Pursuant to *Budziszewski*, Millbrandt was required to "unequivocally convey to [the petitioner] that federal law mandated deportation as the consequence for pleading guilty." *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 512. As the court acknowledged, Millbrandt's advice "fell slightly short" of this. We agree with the petitioner that, instead, Millbrandt's advice inaccurately conveyed to the petitioner that he would have some chance of avoiding deportation after pleading guilty, and therefore counsel's advice did not meet the standard set forth in *Padilla* as interpreted by *Budziszewski* and applied by us in *Duncan*.

We therefore conclude that Millbrandt performed deficiently when he advised the petitioner in regard to the immigration consequences of his guilty plea.

B

The petitioner next argues that, as a result of counsel's deficient performance, he was prejudiced because he would not have pleaded guilty had he been properly advised of the immigration consequences of his guilty plea.[7] We conclude that the record is inadequate for us to determine whether the petitioner proved prejudice under *Strickland*.

As we previously stated, *Strickland* requires that a petitioner prove both deficient performance and resulting prejudice, and thus a court can find against a petitioner on either ground. *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). In the present case, the habeas court concluded that the petitioner had failed to satisfy the performance prong of *Strickland*, and, therefore, it did not determine whether the petitioner also had failed to satisfy the prejudice prong. We recognize, as the parties have observed, that the habeas court did make certain factual findings that might be relevant to a prejudice analysis. Nevertheless, the habeas court failed to consider whether, if Millbrandt's performance

was constitutionally deficient, "there is a reasonable probability that, but for [that deficient performance], [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 278. Because the question of prejudice presents a mixed question of fact and law, we cannot conclude whether the petitioner was prejudiced by Millbrandt's deficient performance without the habeas court's complete factual findings concerning the *Strickland* prejudice prong. *Small* v. *Commissioner of Correction*, supra, 717 ("[t]he application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland* . . . is a mixed question of law and fact subject to our plenary review"); see also *State* v. *Daly*, 111 Conn. App. 397, 400, 960 A.2d 1040 (2008) ("it is well established that as an appellate tribunal, we do not find facts"), cert. denied, 292 Conn. 909, 973 A.2d 108 (2009).

In sum, we conclude that the habeas court abused its discretion when it denied the petitioner's petition for certification to appeal because a court could resolve the issues in a different manner. We further conclude that the petitioner proved that Millbrandt rendered deficient performance when advising him of the immigration consequences of his guilty plea. We therefore remand the matter to the habeas court with direction to determine whether the petitioner was prejudiced by Millbrandt's deficient performance.

The judgment is reversed and the case is remanded for further proceedings on the issue of whether the petitioner was prejudiced by his trial counsel's deficient performance.

In this opinion the other judges concurred.

[1] See 8 U.S.C. § 1227 (a) (2) (A) (iii) (2012).

[2] To support his ineffective assistance of counsel claim, the petitioner further argued, in the first count of his amended petition, that Millbrandt failed (1) adequately to research the immigration consequences of his guilty plea; (2) accurately to advise him about the probability of deportation, removal and inadmissibility for reentry under the terms of the plea agreement; and (3) to effectively utilize the possible immigration consequences of pleading guilty during the plea negotiation process. Because we determine that Millbrandt rendered deficient performance when he failed to advise the petitioner of the immigration consequences of his guilty plea, we need not reach the petitioner's remaining arguments as to other acts which also may have constituted deficient performance.

The petitioner also claimed, in the second count of his amended petition, that his guilty plea was not made knowingly, intelligently, and voluntarily because he did not know or understand the immigration consequences that he would face upon the entry of a guilty plea, and that he would not have entered a guilty plea had he known and understood the immigration consequences of that plea. On the day of the habeas trial, the petitioner withdrew this count.

[3] The petitioner argues that the court made a clearly erroneous factual finding that "counsel advised the petitioner that he should assume he would be deported." The petitioner never developed this argument further, and the record supports the court's factual finding. Millbrandt testified that he advised the petitioner that "it was safe to assume that he would be deported." This testimony aligns with the court's factual findings.

[4] The petitioner argues that the court made a clearly erroneous factual finding when it found that Millbrandt had consulted an immigration attorney because Millbrandt testified that he did not speak with an immigration attorney in connection with the petitioner's case. Millbrandt, however, also testified that he spoke with an immigration attorney in December, 2011, about the decision in *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), so that he could "determine or obtain some tools that would be helpful in advising clients as to potential immigration consequences" which would follow the entry of a guilty plea to an aggravated felony offense. Thus, in light of the record, the court's factual finding that Millbrandt "spoke with an immigration attorney" is not clearly erroneous.

[5] The petitioner, in his brief, alleges that there were two proposed plea offers. The first, made by the state, involved a guilty plea to one count of possession of marijuana with intent to sell, in violation of General Statutes § 21a-277 (b), and required a sentence of seven years of incarceration, execution suspended after twenty months, and three years of probation. The second, made by the court, involved a guilty plea to § 21a-278 (b), for which the court would consider a motion to impose a sentence less than the five year mandatory minimum.

[6] Had he proceeded to trial on all of the charges, the petitioner's potential sentencing exposure was approximately thirty-eight to forty-seven years of incarceration, with a mandatory minimum term of five years of imprisonment. Millbrandt described the judge as a "heavy hitter" and that "from the outset [he] had indicated that this was a case that required a jail sentence and so had the state." Furthermore, the option of a diversionary program was "never on the table."

[7] The petitioner argues in the alternative that the court improperly speculated, during its oral decision, that the petitioner pleaded guilty because he was guilty. During the court's canvass of the petitioner, however, he replied "[c]orrect" when asked "[a]re the facts as read by the state essentially correct?" Therefore, we do not agree with the petitioner that the court speculated as to his guilt.