******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# KYLE FREITAG *v.* COMMISSIONER
# OF CORRECTION
# (AC 42818)

Bright, C. J., and Moll and Suarez, Js.

*Syllabus*

The petitioner, who had been convicted, on pleas of guilty, of the crimes
of murder and assault in the first degree, appealed to this court from
the judgment of the habeas court denying his petition for a writ of habeas
corpus. The petitioner claimed that O, the attorney who represented
him during the plea proceeding, rendered ineffective assistance, as did
P, the attorney who represented him during the sentencing proceeding.
The petitioner alleged that O failed to properly advise him regarding
potential defenses and made misrepresentations to him about the willing-
ness of a codefendant, B, to testify at the petitioner's criminal trial. The
petitioner further alleged that P failed to present adequate mitigation
evidence at the sentencing proceeding and failed to file a motion to
withdraw the guilty pleas, pursuant to the applicable rule of practice
(§ 39-27 (4)), on the basis of O's ineffective assistance. The petitioner
testified at the habeas trial that O had met with and told him and his
parents on the day of the plea proceeding that he had been informed
by B's counsel that B was not willing to testify at the petitioner's criminal
trial. The petitioner further testified that, until that meeting, he was
under the impression that B was going to testify. The petitioner then
appeared before the trial court for the plea proceeding and initially
rejected a plea offer. The petitioner then changed his mind during the
court's canvass of him and entered his guilty pleas, as it was his under-
standing that this was his final opportunity to accept the plea offer.
Prior to the sentencing proceeding, however, the petitioner learned from
his family that B was willing to testify. The habeas court, in determining
that O did not render deficient performance, rejected the petitioner's
claim that O incorrectly advised him about whether B was willing to
testify. The court made an implicit factual finding that O had told the
petitioner it was not likely that B would testify and an express finding
that O's assessment was reasonable. The habeas court further deter-
mined that its conclusion as to the petitioner's claims against O fore-
closed the petitioner's claim that P improperly failed to file a motion
to withdraw the guilty pleas. The court reasoned that the petitioner
failed to present credible evidence that his pleas were made unwillingly
or involuntarily and determined that P made a reasonable decision not
to file a motion to withdraw the guilty pleas because the state had
insisted that the petitioner plead guilty to the murder charge. The habeas
court thereafter granted the petitioner certification to appeal. *Held*:

1. The habeas court's implicit finding that O told the petitioner during their
   meeting on the day of the plea proceeding that it was not likely B would
   testify at the criminal trial was clearly erroneous, and, thus, the judgment
   had to be reversed and the case remanded for a new trial as to the
   claim that O rendered ineffective assistance in connection with his
   purported misrepresentation about B:

   a. There was no evidence to support the habeas court's finding, the
   petitioner and his father having testified that O, in absolute terms, told
   them B would not testify, and O having testified that he did not recall
   any discussion during the meeting about B's willingness to testify and
   that he did not recall ever having told the petitioner that B would not
   testify created a dispute as to that factual issue, and this court could
   not discern whether the habeas court would have credited the testimony
   of the petitioner and his father in the absence of the habeas court's clearly
   erroneous finding; moreover, contrary to the request by the respondent
   Commissioner of Correction, because this court made no conclusion as
   to whether O rendered deficient performance, a remand for further
   proceedings to address the issue of prejudice was not proper.

   b. Because the habeas court committed error with respect to the petition-
   er's principal claim that O made misrepresentations to him as to B's
   willingness to testify, the judgment also had to be reversed as to the

petitioner's intertwined claim that O rendered ineffective assistance in failing to properly advise him as to potential defenses.

2. The habeas court's judgment as to the petitioner's claims of ineffective assistance of counsel as to P had to be reversed in part and the case remanded for a new trial on the claim that P was ineffective in failing to file a motion to withdraw the guilty pleas pursuant to § 37-27 (4):

a. Because this court reversed the habeas court's judgment as to certain of the petitioner's ineffective assistance of counsel claims against O, the habeas court's denial of the petitioner's claim that P rendered ineffective assistance in failing to file a motion to withdraw the guilty pleas could not stand; certain of the habeas court's determinations in rejecting the claim as to P were untenable, and its reasoning that P made a strategic decision not to seek withdrawal of the pleas was irrelevant, as the purpose of seeking withdrawal of the guilty pleas was not to negotiate a better plea deal but to insist on going to trial.

b. The habeas court properly concluded that the petitioner did not demonstrate that P rendered ineffective assistance as a result of his failure to present adequate mitigation evidence at sentencing; the record reflected that P submitted ample mitigation evidence, which the sentencing court took into consideration, and the petitioner did not identify any information P failed to present that would have made it reasonably probable that the sentencing court would have imposed a lesser sentence.

Argued October 19, 2020—officially released November 9, 2021

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Newson, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Reversed in part*; *new trial*.

*Deren Manasevit*, assigned counsel, with whom, on the brief, was *Peter Tsimbidaros*, assigned counsel, for the appellant (petitioner).

*Brett R. Aiello*, deputy assistant state's attorney, with whom, on the brief, were *Joseph Valdes*, senior assistant state's attorney, and *Jo Anne Sulik*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

MOLL, J. The petitioner, Kyle Freitag, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court erred in denying (1) count one of the amended petition claiming ineffective assistance of counsel against Attorney Francis O'Reilly, his trial counsel at the time of his guilty pleas, and (2) count two of the amended petition claiming ineffective assistance of counsel against Attorney Norman A. Pattis, his trial counsel at the time of sentencing. We reverse, in part, the judgment of the habeas court and remand the case for a new habeas trial as to certain claims raised in counts one and two of the amended petition.

The following facts and procedural history, as set forth in the habeas court's corrected memorandum of decision or as undisputed in the record, are relevant to our resolution of this appeal. "The petitioner was the defendant in three matters pending in the judicial district of [Stamford-Norwalk] under docket numbers CR-12-0132590, where he was charged with various drug charges, criminal possession of a handgun, and possession of a weapon in a motor vehicle; CR-12-0133383, the subject of the [underlying amended petition for a writ of habeas corpus], where he was charged with murder, attempted murder, two counts of assault [in the] first degree, criminal possession of a handgun, possession of a pistol without a permit, weapon in a motor vehicle, and others; and CR-12-0133384, where he faced a relatively minor possession charge. . . . The allegations in docket ending #383 were that the petitioner and [his] codefendant, [Terrance] Baxter, were driving in the petitioner's minivan on Fort Point Road in Norwalk on October 30, 2012. . . . Baxter was driving, and the petitioner was in the front passenger seat. At some point, the van came upon a scooter being driven in the same direction along the right-hand side of Fort Point Road by a Dajon Johnson, with a Bancroft Daley riding behind him as a passenger. The petitioner did not know the driver but was familiar with . . . Daley from prior interactions on the street. The two vehicles rode in the same direction relatively near each other for some period of time, when, according to one independent witness, the van suddenly accelerated to pull up alongside of the scooter. The petitioner's claim as to this portion of the incident is that the scooter was behind his vehicle and sped up alongside. In any event, when the van and the scooter were beside each other, the petitioner claims to have seen [Daley] reaching toward his waist area. The petitioner pulled out a .32 caliber pistol, reached out of the passenger window, and shot both parties. . . . Baxter immediately sped off, but the two were captured when the van was

stopped about ten minutes later on the highway. According to [the] police, the petitioner made several rather unrepentant statements while in custody about shooting the victims because 'it was me or them.' . . . Johnson died as a result of his gunshot wounds, and . . . Daley was left paralyzed from the mid-back down. The only weapon found in the possession of either victim was a three inch folding knife that was apparently found inside . . . Daley's pocket."

Attorney Howard Ehring, a public defender, initially appeared as the petitioner's criminal defense counsel. In November, 2014, O'Reilly, appointed as assigned counsel, filed an appearance in lieu of Ehring.

"All three [of the petitioner's criminal] matters were on the 'firm jury' list, and the [matter at issue] was scheduled to begin trial, when the cases were called on the docket [on] January 14, 2015. Following some discussions, an offer involving guilty pleas to the murder and assault [in the] first degree charges in exchange for a judicially indicated sentence of a minimum of [twenty-five] years to a maximum of [thirty years], followed by [ten] years of special parole, with a right to argue, was conveyed to the petitioner. That offer was initially rejected by the petitioner, through [Attorney O'Reilly], on the record. While the [trial] court was explaining the withdrawal of the offer and its impact on future negotiations, the petitioner changed his mind and agreed to enter pleas of guilty to one count of murder in violation of General Statutes § 53a-54a (a), and one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). Following the canvass, [the court accepted the pleas, and] the matter was continued to March 11, 2015, for sentencing. On February [17, 2015], however, Attorney . . . Pattis filed an appearance in lieu of Attorney O'Reilly. On April 7, 2015, the petitioner appeared for sentencing represented by Attorney Pattis, where, after hearing from all parties, the court imposed a sentence of [thirty] years to serve, followed by [ten] years of special parole on the murder charge, and [twenty] years concurrent on the assault charge, for a total effective sentence of [thirty] years, followed by [ten] years of special parole."[1] (Footnotes omitted.)

On September 15, 2015, the petitioner, representing himself, filed a petition for a writ of habeas corpus. On April 9, 2018, after assigned habeas counsel had appeared on his behalf, the petitioner filed his operative, two count amended petition for a writ of habeas corpus (amended petition). In count one of the amended petition, the petitioner asserted a claim of ineffective assistance of counsel against O'Reilly, alleging, inter alia, that O'Reilly had (1) incorrectly advised the petitioner that his codefendant, Baxter, had refused, or would refuse, to testify at his criminal trial, and (2) failed to properly advise the petitioner regarding potential

defenses available to him.[2] The petitioner further alleged that, but for O'Reilly's deficient performance, he would not have pleaded guilty but, rather, would have asserted his right to a trial. In count two of the amended petition, the petitioner asserted a claim of ineffective assistance of counsel against Pattis, alleging, inter alia, that Pattis had failed (1) to present adequate mitigation evidence at sentencing, and (2) to file a motion to withdraw his guilty pleas predicated on the ineffective assistance of counsel rendered by O'Reilly.[3] The petitioner further alleged that, but for Pattis' deficient performance, it was reasonably probable that he would have received a lesser sentence. On April 30, 2018, the respondent, the Commissioner of Correction, filed a return, leaving the petitioner to his proof as to his material allegations.

The matter was tried to the habeas court, *Newson, J.*, over the course of three days in July, August and November, 2018.[4] On February 26, 2019, the court issued a corrected memorandum of decision[5] denying both counts of the amended petition. Thereafter, the petitioner filed a petition for certification to appeal from the judgment, which the court granted.[6] This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner's first claim is that the habeas court improperly denied count one of the amended petition, in which he claimed that O'Reilly had rendered ineffective assistance of counsel. Specifically, the petitioner asserts that the court incorrectly rejected his ineffective assistance of counsel claim predicated on O'Reilly's alleged (1) misrepresentation to him about Baxter's willingness to testify at his criminal trial, and (2) failure to properly advise him about the potential defenses available to him. For the reasons that follow, we conclude that a new habeas trial is necessary as to these claims.

We begin by setting forth the following relevant legal principles and standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, 180 Conn. App. 697, 703–704, 184 A.3d 804, cert. denied, 330 Conn. 939, 195 A.3d 692 (2018).

"The [long-standing] test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. . . . Where . . . a defendant is represented by counsel during the

plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." (Citation omitted; internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 471, 72 A.3d 426 (2013), appeal dismissed, 317 Conn. 594, 119 A.3d 1153 (2015). "[I]n order to determine whether the petitioner has demonstrated ineffective assistance of counsel [when the conviction resulted from a guilty plea], we apply the two part test enunciated by the United States Supreme Court in *Strickland* [v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and *Hill* [v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. . . . In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . .

"To satisfy the performance prong under *Strickland-Hill*, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A petitioner who accepts counsel's advice to plead guilty has the burden of demonstrating on habeas appeal that the advice was not within the range of competence demanded of attorneys in criminal cases. . . . The range of competence demanded is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . Reasonably competent attorneys may advise their clients to plead guilty even if defenses may exist. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . .

"To satisfy the prejudice prong [under *Strickland-Hill*], the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Humble* v. *Commissioner of Correction*, supra, 180 Conn. App. 704–705.

A

We first turn to the petitioner's claim of ineffective assistance of counsel predicated on O'Reilly's purported misrepresentation to him regarding Baxter's willingness to testify at his criminal trial. The petitioner contends that the evidence adduced at the habeas trial established that, almost immediately before the petitioner had entered his guilty pleas, O'Reilly misrepre-

sented to him that Baxter would not testify and that, as a result of that misrepresentation, he entered guilty pleas that were uninformed. We construe the essence of the petitioner's contention to be that the court, in determining that O'Reilly's performance was not deficient, made a clearly erroneous implicit factual finding that, prior to the petitioner pleading guilty, O'Reilly told him that it was *not likely* that Baxter would testify. We conclude that the court's implicit factual finding is clearly erroneous.

The following additional facts and procedural history are relevant to our resolution of this claim. At the habeas trial, the petitioner called the following witnesses: Baxter; Donald Freitag, the petitioner's father (petitioner's father); Ehring; O'Reilly; and Attorney Francis DiScala, who was Baxter's criminal defense counsel.

Baxter testified in relevant part as follows. On October 30, 2012, Baxter was driving the petitioner to the petitioner's place of employment. Before reaching their destination, the petitioner noticed that Johnson and Daley had started to follow them, at which point the petitioner told Baxter to "get out [of] here" because "[they're] coming  .  .  .  ." The petitioner appeared "scared" and "wasn't himself." Immediately before the shooting, Johnson and Daley were positioned on their scooter next to the passenger side of the petitioner's minivan, where the petitioner was seated, at which time Daley pulled a hood over his head and began moving his hand toward his waist. At that time, the petitioner was screaming, "going crazy," and stating that "they're following us, [t]hey're trying to get me  .  .  .  ." The petitioner then pulled out a gun and shot Johnson and Daley, after which Baxter sped away from the scene. Afterward, the petitioner conveyed to Baxter that he had observed Daley reaching for a gun in his waistband. The petitioner also expressed to Baxter that "these kids .  .  .  keep coming for me," that he had "to go somewhere, [he had] to move or something," and that he was "tired of these kids [who had] killed his friend  .  .  .  ."[7]

Sometime before the petitioner had entered his guilty pleas, Baxter, while he was in jail, met with O'Reilly, DiScala, and a private investigator for the purpose of "getting things situated for the trial." At some point in time, DiScala advised Baxter of his fifth amendment right against self-incrimination, but Baxter intended to waive that right and to testify in support of the petitioner.

The petitioner testified in relevant part as follows. On October 30, 2012, while Baxter was driving him to his place of employment, the petitioner noticed Johnson and Daley following them on a scooter. The petitioner believed Johnson and Daley to be members of a local gang that the petitioner had encountered on prior occasions.[8] The petitioner instructed Baxter to drive past his place of employment because he did not want John-

son and Daley to know where he worked. At that time, the petitioner was feeling "all over the place because [he was] wondering if [Johnson and Daley] were following [him] to get [him] . . . ." Johnson and Daley eventually maneuvered their scooter next to the passenger side of the minivan where the petitioner was seated. The petitioner noticed that Daley, who had a hood over his head, was moving his hand toward his waistband for a "metal object." Fearing that Daley was reaching for a gun to shoot him, the petitioner retrieved his gun and shot Johnson and Daley, after which Baxter sped away from the scene.

On January 14, 2015, before appearing in front of the trial court and entering his guilty pleas, the petitioner met with his parents and O'Reilly at the courthouse (January 14, 2015 meeting). During the January 14, 2015 meeting, O'Reilly told the petitioner that DiScala had informed him that Baxter was not willing to testify at the petitioner's criminal trial. Until that disclosure, the petitioner was under the impression that Baxter was going to testify. The petitioner considered Baxter's testimony to be "more than important" and believed that he "needed" Baxter's testimony to support his defense.

Three minutes after being informed by O'Reilly that Baxter would not be testifying, the petitioner appeared before the trial court to either accept or reject the plea offer. The petitioner's understanding was that this proceeding was his final opportunity to accept the plea offer.[9] Prior to January 14, 2015, and at the time he appeared before the court, the petitioner had no intention of pleading guilty. After O'Reilly had informed the court that the petitioner was rejecting the plea offer, and as the petitioner was being canvassed by the court, he changed his mind and decided to accept the offer. As the petitioner explained: "[A]s the judge was [canvassing me], my mind's bouncing all over the place. I got teary eyed. I started to get emotional based off what I just heard about my friend telling, you know, basically, you know, not coming forth for me. And that completely threw me off, and I just, I lost, I lost hope in that moment. And I just—I didn't know what [to] do." After entering his guilty pleas but before being sentenced, the petitioner learned from his family that Baxter was, in fact, willing to testify. Had he known that Baxter was willing to testify, the petitioner would not have pleaded guilty.

The petitioner's father testified in relevant part as follows. Prior to the January 14, 2015 meeting, the petitioner's father believed that Baxter would be a helpful witness for the petitioner, that Baxter would testify at the petitioner's criminal trial, and that the petitioner would insist on going to trial. During the January 14, 2015 meeting, however, O'Reilly conveyed that Baxter would not be testifying. According to the petitioner's father, the disclosure by O'Reilly that "[o]ne of the main

witnesses [was] not going to testify" shocked and scared the petitioner.

Ehring testified in relevant part as follows. As the petitioner's initial criminal defense counsel, Ehring's defense strategy was to claim either self-defense or extreme emotional disturbance. During the course of his investigation, Ehring met with Baxter and DiScala. Ehring determined that Baxter's testimony would be helpful to the petitioner, as Baxter could bolster the petitioner's defense by testifying that the petitioner had felt terrified and threatened by Johnson and Daley immediately before the shooting. Ehring discussed with the petitioner the import of Baxter's prospective testimony, which, according to Ehring, the petitioner believed to be pivotal to his defense. Ehring also advised the petitioner that, if called as a witness at the petitioner's criminal trial, Baxter could invoke his fifth amendment right against self-incrimination and refuse to testify; however, on the basis of his conversations with DiScala and others, Ehring was "pretty certain" that Baxter would waive his fifth amendment right and elect to testify. After O'Reilly had replaced Ehring as the petitioner's criminal defense counsel, Ehring told O'Reilly that Baxter was willing to testify in support of the petitioner.

O'Reilly testified in relevant part as follows. After replacing Ehring as the petitioner's criminal defense counsel, O'Reilly met with Baxter, DiScala, and a private investigator at the jail where Baxter was being held "to see if [Baxter] might be helpful." O'Reilly did not recall whether there was any discussion during that meeting regarding Baxter's willingness to testify at the petitioner's criminal trial; however, on the basis of the information that he gathered at the meeting, O'Reilly did not believe that Baxter's testimony would be helpful to the petitioner.

O'Reilly recalled the January 14, 2015 meeting, during which the discussion was focused on "[the petitioner's] future and . . . what [O'Reilly] thought the end result of going to trial would be and what [O'Reilly] thought the best outcome [was] for [the petitioner] to take under the circumstances." O'Reilly did not remember speaking specifically about Baxter during that meeting, and O'Reilly did not recall ever telling the petitioner that Baxter would not testify at his criminal trial. At the end of the meeting, notwithstanding O'Reilly's recommendation that the petitioner accept the plea offer, the petitioner expressed to O'Reilly that he wanted to decline the plea offer and to proceed to trial. O'Reilly did not recall whether the petitioner gave an explanation for his subsequent decision to change his mind and to accept the plea offer.

DiScala testified in relevant part as follows. As Baxter's criminal defense counsel, DiScala advised Baxter that, if called as a witness at the petitioner's criminal

trial, he could invoke his fifth amendment right against self-incrimination and decline to testify. DiScala further advised Baxter that the state would potentially withdraw a favorable plea deal that had been offered to him if he elected to testify.[10] Nevertheless, DiScala believed that Baxter was "always willing" to testify at the petitioner's criminal trial.

With regard to his communications with O'Reilly, DiScala remembered meeting with Baxter, O'Reilly, and a private investigator at the jail where Baxter was being held in order for O'Reilly "to get a better understanding of what Baxter would be testifying to." DiScala did not recall there being any discussion during that meeting on the topic of Baxter's willingness to testify at the petitioner's criminal trial. Additionally, DiScala did not recall having a specific conversation with O'Reilly following that meeting regarding Baxter's willingness to testify; however, DiScala was adamant that he never told O'Reilly that Baxter would not testify. DiScala speculated that he may have stated to O'Reilly either that Baxter would "be crazy to testify" or that he would recommend that Baxter invoke his fifth amendment privilege and decline to testify, but he would not have represented to O'Reilly that Baxter was not going to testify.

In its decision, the court found that O'Reilly had made an "assessment that . . . Baxter was not going to be available as [a] witness if the case went to trial." The court determined that there was "nothing unreasonable or deficient in Attorney O'Reilly's assessment . . . . An attorney's job is not to make perfect predictions but to make educated ones based on the reasonable possibilities. . . . All parties admit there was no definitive conversation about whether . . . Baxter would testify if called as a witness. Attorney O'Reilly believed it was unlikely that . . . Baxter would not have asserted his privilege against self-incrimination, given [that] he had an open plea agreement with the state. Even if . . . Baxter had expressed an overt willingness to 'help out,' Attorney O'Reilly made an assessment that his testimony would not have been particularly helpful, so he wasn't going to use him." (Citation omitted.) Subsequently in its decision, the court directly addressed and rejected the petitioner's claim that "Attorney O'Reilly 'incorrectly advised' him about whether . . . Baxter was willing to testify on his behalf if called to testify for the defense at trial." The court stated that O'Reilly did not need to be " 'correct' in his assessments of potential witnesses" but was "only required to make a reasonable and educated assessment based on the information before him. In the present case, after taking the time to meet with [Baxter], Attorney O'Reilly made an assessment that [Baxter] was not likely to testify for the defense because [Baxter] had an open plea agreement pending with the state. Given that, [Attorney O'Reilly] presumed that . . . Baxter would likely assert his

privilege against self-incrimination if [Attorney O'Reilly] attempted to call [Baxter] to testify. Even if [Baxter] did decide to testify, Attorney O'Reilly did not assess that [Baxter's] testimony would have been particularly helpful. In the end, whether Attorney O'Reilly was, in [hindsight], actually correct in his assessment of . . . Baxter's willingness to testify is not the question. . . . [Attorney O'Reilly] made a reasoned assessment, given the factors present before him at the time, and the court finds nothing deficient about his conduct." (Citation omitted.)

The petitioner maintains that O'Reilly performed deficiently during the January 14, 2015 meeting by misrepresenting to him, without reservation, that Baxter would not testify at his criminal trial. The court, however, did not find that O'Reilly conveyed to the petitioner, in absolute terms, that Baxter was not going to testify; rather, we read the court's decision as including an implicit factual finding that O'Reilly told the petitioner that it was *not likely* that Baxter would testify, coupled with an express finding that O'Reilly's assessment was reasonable. Thus, we construe the substance of the petitioner's contention to be that the court clearly erred by implicitly finding that, during the January 14, 2015 meeting, O'Reilly conveyed to the petitioner that it was *not likely* that Baxter would testify. We agree that the court clearly erred in making this implicit finding.

Preliminarily, we make clear that the court's express finding that "[a]ll parties admit there was no definitive conversation about whether . . . Baxter would testify if called as a witness" is not germane to the issue before us. Facially, this finding connotes that it was undisputed that no definitive conversation *ever* occurred between *any* individuals concerning Baxter's willingness to testify. If so broadly construed, this finding would be clearly erroneous in light of the testimony in the record, as summarized previously in this part of the opinion, plainly demonstrating that certain individuals, including the petitioner and the petitioner's father, maintained that discussions regarding Baxter's willingness to testify did occur. In his reply brief, however, the petitioner clarifies that he is not challenging this finding as clearly erroneous because, considered in context, this finding refers only to communications between O'Reilly and DiScala in relation to the meeting that they had with Baxter while he was in jail. In other words, the petitioner contends that this finding reasonably can be interpreted to be that there was no dispute that no definitive conversation happened *between O'Reilly and DiScala at that meeting* regarding Baxter's willingness to testify. We agree. Limited in the manner posited by the petitioner, this finding is supported by the record, as both O'Reilly and DiScala testified that they did not recall the subject of Baxter's willingness to testify being mentioned during that meeting.[11] This finding is separate and distinct from the implicit finding being chal-

lenged by the petitioner, that is, that O'Reilly conveyed to the petitioner, during the January 14, 2015 meeting, that Baxter was *not likely* to testify at his criminal trial.

We iterate that the finding at issue is an implicit finding necessarily found by the court. In rejecting the petitioner's claim that O'Reilly performed deficiently by " 'incorrectly advis[ing]' " him during the January 14, 2015 meeting about Baxter's willingness to testify, the court concluded that O'Reilly made a reasonable assessment that Baxter "was *not likely* to testify for the defense" because Baxter had an open plea agreement pending with the state, and, thus, "Baxter would *likely* assert his privilege against self-incrimination if [Attorney O'Reilly] attempted to call [Baxter] to testify." (Emphasis added.) Given that the crux of the petitioner's claim, as identified and rejected by the court, concerned the information conveyed by O'Reilly to the petitioner at the January 14, 2015 meeting, and that the court found that O'Reilly's assessment was that Baxter "was not likely" to testify and that Baxter "would likely" invoke his fifth amendment right against self-incrimination if called to testify, the only reasonable reading of the court's decision is that the court implicitly found that, during the January 14, 2015 meeting, O'Reilly told the petitioner that it was *not likely* that Baxter would testify.

We now turn our attention to the merits of the petitioner's claim. We observe that "[a] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Charles* v. *Commissioner of Correction*, 206 Conn. App. 341, 357, A.3d (2021), petition for cert. filed (Conn. September 29, 2021) (No. 210187). In the present case, there is no evidence in the record supporting the court's finding that, during the January 14, 2015 meeting, O'Reilly told the petitioner that it was *not likely* that Baxter would testify. None of the three individuals who attended that meeting and who testified at the habeas trial provided testimony that supports that finding. Both the petitioner and the petitioner's father testified that O'Reilly, in absolute terms, told them that Baxter *would not* testify, whereas O'Reilly testified that he did not recall there being any discussion during that meeting about Baxter's willingness to testify. There is no other evidence in the record that sheds light on any discussions had during the January 14, 2015 meeting relating to Baxter. Accordingly, we conclude that the court's finding is clearly erroneous.

Our conclusion that the court's finding is clearly erroneous does not mean that the petitioner has satisfied his burden to prove that O'Reilly rendered deficient performance. The petitioner asserts that he established

that, during the January 14, 2015 meeting, O'Reilly rendered deficient performance by misrepresenting to him that Baxter would not testify at his criminal trial. It is axiomatic, however, that finding facts and resolving questions of credibility are within the sole province of the finder of fact, not this court. See *Brooks* v. *Commissioner of Correction*, 105 Conn. App. 149, 153, 937 A.2d 699, cert. denied, 286 Conn. 904, 943 A.2d 1101 (2008). Although the petitioner and the petitioner's father testified that O'Reilly told them, in absolute terms, that Baxter would not testify, we cannot discern whether the habeas court would have credited this testimony in the absence of the court's clearly erroneous finding. See *Salmon* v. *Commissioner of Correction*, 178 Conn. App. 695, 712, 177 A.3d 566 (2017) (observing that it was uncertain whether, in absence of habeas court's clearly erroneous factual finding, habeas court would have credited petitioner's testimony to resolve factual issue). Moreover, O'Reilly testified that, although he did not recall Baxter's willingness to testify being discussed during the January 14, 2015 meeting, he also did not recall ever telling the petitioner that Baxter would not testify, thereby creating a dispute as to this factual issue. Under these circumstances, we conclude that the judgment rendered on count one must be reversed and the case must be remanded for a new trial as to the petitioner's claim that O'Reilly rendered ineffective assistance of counsel in connection with his purported misrepresentation about Baxter. See id., 712–13 (reversing judgment and remanding case for new habeas trial when habeas court made clearly erroneous factual finding, leaving unresolved factual issue that presented question of credibility to be addressed by habeas court).[12]

At this juncture, we note that the court disposed of the petitioner's ineffective assistance of counsel claim against O'Reilly on the performance prong of *Strickland-Hill* only without addressing the prejudice prong. See *Zachs* v. *Commissioner of Correction*, 205 Conn. App. 243, 255, 257 A.3d 423 ("[b]ecause both [the performance and the prejudice] prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong" (internal quotation marks omitted)), cert. denied, 338 Conn. 909,      A.3d      (2021). In his appellate brief, the respondent requests that we remand the case to the court to make factual findings as to the prejudice prong in the event that we conclude that the court improperly determined that the petitioner failed to prove deficient performance by O'Reilly. In support of this argument, the respondent cites *Miller* v. *Commissioner of Correction*, 176 Conn. App. 616, 170 A.3d 736 (2017), in which a habeas court denied an ineffective assistance of counsel claim only on the basis of the performance prong. Id., 621. On appeal, this court concluded that (1) counsel's performance was deficient

(because counsel's advice regarding immigration conse-
quences was constitutionally insufficient), and (2) the
record was inadequate to determine whether counsel's
deficient performance prejudiced the petitioner, such
that this court remanded the matter to the habeas court
for further proceedings to make a determination on the
prejudice prong. Id., 635–37. In the present case, unlike
in *Miller*, we do not make a conclusion as to whether
O'Reilly rendered deficient performance; rather, as a
result of the habeas court's clearly erroneous finding,
we conclude that a new trial is necessary. Under these
circumstances, a remand to the habeas court for further
proceedings to address the prejudice prong is not
proper. See, e.g., *Salmon* v. *Commissioner of Correc-
tion*, supra, 178 Conn. App. 714–15 (reversing habeas
court's judgment denying ineffective assistance of coun-
sel claim and remanding case to court for new trial
when court made clearly erroneous factual finding as
to performance prong and did not address prejudice
prong in its decision).

B

We next turn to the petitioner's claim of ineffective
assistance of counsel predicated on O'Reilly's pur-
ported failure to properly advise him as to the potential
defenses available to him, including self-defense, which
requires only a brief discussion. We construe this claim
to be intertwined with the petitioner's principal claim
predicated on O'Reilly's purported misrepresentation
concerning Baxter's willingness to testify. Because we
concluded in part I A of this opinion that the court
committed error with respect to the principal claim and
that a new trial as to that claim is necessary, we further
conclude that the judgment rendered on count one must
be reversed insofar as the petitioner claimed that O'Re-
illy rendered ineffective assistance of counsel in con-
nection with his purported failure to properly advise
the petitioner as to the potential defenses available to
him, and the case must be remanded for a new trial as
to that claim.

II

The petitioner's second claim is that the habeas court
improperly denied count two of the amended petition,
in which he asserted a claim of ineffective assistance
of counsel against Pattis. Specifically, the petitioner
asserts that the court committed error in rejecting his
claim that Pattis rendered ineffective assistance by fail-
ing (1) to file a motion to withdraw the petitioner's
guilty pleas under Practice Book § 39-27 prior to sen-
tencing, and (2) to present adequate mitigation evidence
at sentencing. We address each assertion in turn.

A

First, the petitioner contends that the court improp-
erly concluded that Pattis did not render ineffective
assistance of counsel as a result of his failure to file a

motion to withdraw the petitioner's guilty pleas under Practice Book § 39-27 (4).[13] For the reasons that follow, we conclude that a new trial is necessary as to this claim.

The following additional facts and procedural history are relevant to our resolution of this claim. In the amended petition, the petitioner asserted that Pattis rendered ineffective assistance of counsel, in part, on the basis of an allegation that Pattis failed "to seek the trial court's permission to withdraw the petitioner's guilty pleas on the basis that they were unknowing, unwilling, and/or involuntary based on [O'Reilly's] deficient performance for the reasons stated in [count one of the amended petition] . . . ." In its decision, the court rejected this claim, stating the following three reasons. First, the court's conclusion that the petitioner failed to demonstrate that O'Reilly rendered ineffective assistance of counsel foreclosed this claim. Second, the petitioner failed to present any credible evidence that his guilty pleas were " 'unwilling or involuntary . . . .' " Third, there was evidence in the record demonstrating that Pattis had considered filing a motion to withdraw the guilty pleas, but he made a reasonable decision against doing so when he discovered that the state would "insist on the murder charge in any plea agreement, which meant that the present plea agreement gave the petitioner the opportunity to argue for the minimum mandatory sentence he was exposed to."

The petitioner asserts that his guilty pleas were not made knowingly, intelligently, or voluntarily in light of O'Reilly's ineffective assistance of counsel, and, thus, it was incumbent on Pattis to move to withdraw his guilty pleas under Practice Book § 39-27 predicated on a claim that he was denied effective assistance of counsel. In light of our conclusion in part I of this opinion that a new trial is necessary, in part, as to the petitioner's ineffective assistance of counsel claim against O'Reilly, we conclude that a new trial is also necessary as to this claim against Pattis. The court's first two reasons for rejecting this claim against Pattis—that the petitioner failed to establish that O'Reilly rendered ineffective assistance of counsel, and that the petitioner failed to demonstrate that his pleas were unwilling or involuntary—are untenable following our reversal of the denial, in part, of count one of the amended petition and attendant remand for a new trial. As for the court's third reason, whether Pattis made a strategic decision not to seek withdrawal of the petitioner's guilty pleas because of the state's insistence on the petitioner pleading guilty to the murder charge—is irrelevant to the issue here. The petitioner's claim regarding O'Reilly was that, but for O'Reilly's ineffective assistance, the petitioner would have asserted his right to a trial rather than enter the guilty pleas. Thus, the purpose of seeking withdrawal of the guilty pleas was not to negotiate a better plea deal but to insist on going to trial.[14]

Accordingly, under the circumstances of this case, we conclude that the judgment rendered on count two must be reversed insofar as the petitioner claimed that Pattis rendered ineffective assistance of counsel by failing to file a motion to withdraw the petitioner's guilty pleas, and the case must be remanded for a new trial as to that claim.

B

Second, the petitioner contends that the court improperly concluded that Pattis did not render ineffective assistance of counsel as a result of his failure to present adequate mitigation evidence at sentencing. We disagree.

"Criminal defendants have a constitutional right to effective assistance of counsel during the sentencing stage." (Internal quotation marks omitted.) *Cruz* v. *Commissioner of Correction*, 206 Conn. App. 17, 31, 257 A.3d 399 (2021). "A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . In *Strickland* [v. *Washington*, supra, 466 U.S. 687], the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . With respect to the prejudice component, [i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." (Citations omitted; internal quotation marks omitted.)

*Sotomayor* v. *Commissioner of Correction*, 135 Conn. App. 15, 21–22, 41 A.3d 333, cert. denied, 305 Conn. 903, 43 A.3d 661 (2012).

The following additional facts and procedural history are relevant to our resolution of this claim. After pleading guilty on January 14, 2015, the petitioner was sentenced on April 7, 2015. During sentencing, Pattis asked the court to impose twenty-five years of incarceration, which was the mandatory minimum sentence for a murder conviction. See General Statutes § 53a-35a (2). Pattis offered mitigation evidence in support of the petitioner, including telling the court that (1) two people whom the petitioner knew were killed by local gang members after being "green-lighted," a term described by Pattis as "a signal sent to gang members in the [local] community that they could be killed with impunity," (2) the petitioner "struggled against things that, frankly, made his life a nightmare while he was a teenager," including attending a party where he witnessed his friend, Amos Brown, "involved in a lethal struggle," testifying as a witness at Brown's criminal trial, and "then believ[ing] he was put on a hit list and marked for death,"[15] (3) for the petitioner's safety, the petitioner's family sent him to school in New York for a few years before he returned to Connecticut to work with his family, (4) the petitioner was "not . . . proud of what he did," "made a mistake in shooting to kill," and "[understood] that he erred," and (5) the petitioner was not the "legal fiction that the state has tried to create" of "some irresponsible gangbanger carrying guns for anything other than self-protection." Pattis further brought in the petitioner's father and Brown's father to address the court, each of whom made positive remarks about the petitioner and discussed the violence that the petitioner had experienced in his life. The petitioner also addressed the court.

In sentencing the petitioner to a total effective sentence of thirty years of incarceration, followed by ten years of special parole, the sentencing court acknowledged that the petitioner had lived in a violent environment, feared for his life, took full responsibility for his actions, and was "more than the events that occurred on October 30, 2012"; nevertheless, the court determined that the petitioner's conduct was not justified. Specifically, the court stated: "[The petitioner] did not have a right to take . . . Johnson's life. He did not have a right to put . . . Daley in a wheelchair for the rest of his life. . . . Johnson and . . . Daley had families, had friends. They had long lives ahead of them and . . . Johnson's life is obviously over and . . . Daley's life has been severely affected, and everyone, including [the petitioner], has to be accountable for his conduct." The court further observed that "[t]here have been allegations that [Johnson and Daley] were gang members and implications . . . that they were somehow violent or responsible for criminal conduct and, to my knowl-

edge, they weren't. And even if they were—and, again, I'm not saying that they were, that does not justify what [the petitioner] did . . . ."

In its decision, the habeas court stated that the transcript of the petitioner's sentencing, which was admitted into evidence as a full exhibit during the habeas trial, reflected that "Attorney Pattis argued, in direct response to some of the state's comments, about the violence surrounding the petitioner, his attempts to avoid that conflict, and his fear of being targeted, and the court recognized those arguments." Accordingly, the court concluded that the petitioner's claim "fails because it is directly refuted by the evidence, and the petitioner has failed to present any new or additional evidence before this court that he claims would have altered the . . . sentence."

The petitioner claims that Pattis did not adequately advocate for him during sentencing because he "failed to establish critical facts in order to provide a context for the shooting in the most positive, sympathetic light to the petitioner," including that Johnson and Daley were members of the local gang that had threatened him in the past. We are not persuaded. As the habeas court properly determined, the record reflects that Pattis submitted ample mitigation evidence in support of the petitioner at sentencing, which the sentencing court took into consideration. In imposing its sentence, the sentencing court emphasized the serious nature and severe consequences of the petitioner's actions. As the habeas court correctly observed, the petitioner did not identify any information that Pattis failed to present that would have made it reasonably probable that the sentencing court would have imposed a lesser sentence. In particular, with respect to the petitioner's contention that Pattis should have provided information demonstrating that Johnson and Daley were gang members, the sentencing court stated that the petitioner's conduct was not justified *even if* Johnson and Daley were gang members who were "somehow violent or responsible for criminal conduct . . . ." Accordingly, we conclude that the habeas court properly concluded that the petitioner failed to demonstrate that Pattis rendered ineffective assistance of counsel in relation to this claim.

The judgment is reversed as to count one of the amended petition for a writ of habeas corpus only insofar as the petitioner claimed ineffective assistance of counsel against Attorney Francis O'Reilly in connection with the failure to correctly advise the petitioner concerning Terrance Baxter's willingness to testify and the failure to properly advise the petitioner about the potential defenses available to him and the case is remanded to the habeas court for a new trial as to those claims; the judgment is reversed as to count two of the amended petition only insofar as the petitioner claimed ineffective assistance of counsel against Attorney Norman A.

Pattis in connection with the failure to move to withdraw the petitioner's guilty pleas predicated on the ineffective assistance of counsel rendered by O'Reilly and the case is remanded to the habeas court for a new trial as to that claim; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] After the sentencing court had announced the petitioner's sentence, the state entered a nolle as to the charges pending in docket number CR-12-0132590. The disposition of docket number CR-12-0133384 is unclear; however, in its decision, the habeas court noted that the plea deal agreed to by the petitioner "resolved all outstanding files and charges pending against the petitioner."

[2] In support of count one of the amended petition, the petitioner alleged additional deficiencies on the part of O'Reilly, which the habeas court rejected in its corrected memorandum of decision. The petitioner has not raised any claims on appeal concerning those additional alleged deficiencies.

[3] In support of count two of the amended petition, the petitioner alleged additional deficiencies on the part of Pattis, which the habeas court rejected in its corrected memorandum of decision. The petitioner has not raised any claims on appeal concerning those additional alleged deficiencies.

[4] On August 10, 2018, the parties rested and presented closing arguments. On August 13, 2018, the petitioner filed a motion to open the evidence to present the testimony of an additional witness, Attorney Francis DiScala, which the court granted, without objection, on August 24, 2018. On November 1, 2018, the parties elicited testimony from DiScala and, after resting, presented additional closing arguments.

[5] The court issued an original memorandum of decision on February 22, 2019. On February 26, 2019, the court issued the corrected memorandum of decision, which corrected certain typographical errors.

[6] The petitioner applied for, and was granted, a waiver of fees, costs, and expenses and appointment of counsel on appeal.

[7] See footnote 8 of this opinion.

[8] The petitioner testified that he was a witness in a criminal trial in which Amos Brown, his friend, was charged with, but later acquitted of, murder. The petitioner further testified that, following Brown's acquittal, Brown was killed by members of the local gang of which, the petitioner believed, Johnson and Daley were members. The petitioner testified that, following Brown's acquittal, he was threatened and attacked by members of the gang.

[9] The transcript of the January 14, 2015 hearing, which was admitted into evidence as a full exhibit during the habeas trial, reflects that the trial court informed the petitioner that any plea accepted by the court after that day would be an open plea exposing the petitioner to the maximum sentence.

[10] Baxter testified that, on April 15, 2015, pursuant to a plea agreement, he pleaded guilty to several crimes, including hindering prosecution in relation to the events of October 30, 2012, and was subsequently sentenced to six years of incarceration followed by four years of special parole.

[11] The limited scope of this finding is further evinced by comments made by the habeas court and the petitioner's counsel during the closing arguments held following DiScala's testimony. Specifically, the following colloquy occurred:

"The Court: I mean, I'll listen to it back, and, I mean, I thought the testimony that was given here today was, we set a meeting at the jail, and I thought we were there to discuss whether or not Baxter was going to testify; *and I thought the testimony was something to the effect of, but [whether or not Baxter was going to testify] didn't come up during that meeting between [O'Reilly, DiScala and Baxter].*

"[The Petitioner's Counsel]: That's correct, Your Honor. My recollection of the testimony . . . is that that meeting focused on what . . . Baxter's testimony would be . . . . *So, my understanding of the facts and the testimony is that there was never an in-depth discussion, would . . . Baxter testify at that meeting . . . .*" (Emphasis added.)

[12] We note that clearly erroneous factual findings are deemed harmless when they "do not undermine appellate confidence in the habeas court's fact-finding process . . . ." (Internal quotation marks omitted.) *Charles* v. *Commissioner of Correction*, supra, 206 Conn. App. 358. The record does not reflect that either (1) the court discredited the testimony of the petitioner and the petitioner's father, or (2) assuming that the testimony of the peti-

tioner and the petitioner's father was credible, there was sufficient evidence to uphold the court's determination that the petitioner failed to prove deficient performance by O'Reilly. Cf. id., 358–59 (concluding that habeas court's clearly erroneous findings were harmless). Thus, we cannot conclude that the court's clearly erroneous finding was harmless.

[13] Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance are as follows . . .

"(4) [t]he plea resulted from the denial of effective assistance of counsel . . . ."

[14] At the habeas trial, the petitioner testified that he had discussions with Pattis about withdrawing his guilty pleas on the basis of Baxter's availability to testify at his criminal trial. Pattis was not called as a witness at the habeas trial.

[15] See footnote 8 of this opinion.